IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:21-cv-00419 |
| v. | ) |
| | ) Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Jason S. ("Claimant") brings a motion to reverse the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIBs"). The Commissioner brings a motion for summary judgment seeking to uphold the decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons discussed herein, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #15), is granted and the Commissioner's motion for summary judgment, (Dckt. #21), is denied.

**I.  BACKGROUND**

**A.  Procedural History**

Claimant first filed a disability application on July 8, 2015, alleging a disability onset date of May 16, 2014. At the time of his application, Claimant was forty-four years old. His claim was denied initially and upon reconsideration. On October 11, 2017, Administrative Law

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by his first name and the first initial of his last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

Judge ("ALJ") Edward Studzinski issued an unfavorable decision denying Claimant's application for benefits. (R. 60-78). Claimant appealed to this Court, which reversed the ALJ's decision and remanded the case for further consideration. *Jason S. v. Saul*, No 18 C 8371, 2020 WL 291381 (N.D.Ill. Jan. 21, 2020). On March 3, 2020, the Appeals Council vacated the decision of the Commissioner and remanded the case to ALJ Studzinski for additional proceedings. (R. 738-42). The ALJ held a second hearing on July 21, 2020, (R. 666-703), and issued a second opinion denying Claimant benefits on October 6, 2020, (R. 638-65). Claimant exhausted his administrative remedies and this action followed.

      **B.**      **The Social Security Administration Standard to Recover Benefits**

To qualify for disability benefits, a claimant must demonstrate that he is disabled, meaning he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether a claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable

medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that he has one or more physical or mental impairments, the SSA then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, he is considered disabled and no further analysis is required. If the listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess the claimant's residual functional capacity ("RFC"), or his capacity to work in light of the identified impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id.* If the claimant cannot undertake his past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given his RFC, age, education, and work experience. If such jobs exist, he is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

   C.  **The Evidence Presented to the ALJ**

Because the Court has already remanded this case once before, it provides only a brief summary of the evidence underlying Claimant's appeal. A more thorough review of the record can be found in the Court's earlier opinion. *Jason S.*, 2020 WL 291381, at *1-4.

Claimant first required cervical fusion surgery after injuring his neck in a 1998 car accident. (R. 697). On May 16, 2014, he again experienced severe neck pain after lifting a

heavy box at work. (R. 392). Claimant went to the hospital, where he reported pain that radiated into his mid-back, arms, and fingers. (*Id.*). Over the following year, Claimant continued to experience significant radicular pain that did not abate with conservative care. On February 6, 2015, he was referred to neurosurgeon George Cybulski, M.D., who diagnosed Claimant with a herniated cervical disc at the C6-7 level. (R. 624). Dr. Cybulski recommended that Claimant undergo a second cervical fusion surgery, which was performed on February 26, 2015. (*Id.*).

Following the 2015 surgery, Claimant continued to complain of severe pain that radiated into his arms. (*See, e.g.,* R. 459-60, 541, 598-99, 625, 684-85, 908, 978). He also reported muscle weakness, numbness and tingling, and restricted movement. Between 2015 and 2019, four physicians diagnosed Claimant with cervical radiculopathy. (R. 625, 461, 471, 1144).

### D. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. At step one, he found that Claimant had not engaged in substantial gainful activity from his alleged onset date through his date last insured. (R. 644). At step two, the ALJ found that Claimant suffered from the severe impairment of degenerative disc disease. (*Id.*). At step three, he concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments, including Listing 1.04(A) for disorders of the spine. (R. 645-46).

Before turning to step four, the ALJ determined that Claimant had the RFC to perform work with various physical limitations that are not relevant to the Court's decision. (R. 646). At step four, the ALJ determined that Claimant could not have performed his past relevant work as a loan officer through his date last insured. (R. 658). Even so, at step five, the ALJ concluded that a sufficient number of jobs existed in the national economy that Claimant could have

4

performed given his RFC, age, education, and experience, including the representative jobs of account clerk and preparer. (R. 659). As such, the ALJ found that Claimant was not under a disability at any time from May 16, 2014, through September 30, 2019. (R. 660).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant

is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

## III. ANALYSIS

Claimant asserts that the ALJ's step-three assessment of whether Claimant's spinal impairment met Listing 1.04(A) was insufficient.[2] Because this argument has merit, the Court finds that a remand to the SSA is warranted and will not address Claimant's additional argument. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations . . . we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of this argument, which Claimant is free to assert on remand.

The listings describe impairments considered "severe enough to prevent an individual from doing any gainful activity, regardless of [his] age, education, or work experience." 20 C.F.R. §§404.1525(a), 416.925(a). They "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). To match a listed impairment, the claimant must show that his impairment meets "all of the specified medical criteria." *Id.* at 530. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

When a listing is relevant, the ALJ must: (1) identify the appropriate listing by name, (2) give more than a perfunctory analysis of the issues involved, and (3) consider an expert's opinion on the issue. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); *see also Cirelli v. Astrue*, 751 F.Supp.2d 991, 1002 (N.D.Ill. 2010). A listing discussion is perfunctory when the ALJ

---

[2] The Court notes that since the ALJ's decision, Listing 1.04 has been replaced by Listing 1.15. 85 Fed. Reg. 781640, 78179 (Dec. 3, 2020).

6

"provides nothing more than a superficial analysis" of the listing's criteria. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). The Court agrees with Claimant that the ALJ's step three assessment failed to meet this standard.[3]

In order to meet Listing 1.04(A) for disorders of the spine, a claimant must show: (1) that he suffers from a disorder of the spine that results in the compromise of a nerve root or the spinal cord, along with (2) evidence of nerve root compression characterized by (a) neuro-anatomic distribution of pain, (b) limitation of motion of the spine, (c) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by (d) sensory or reflex loss and, (e) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04.

Although the ALJ in this case acknowledged that Claimant suffered from a spinal impairment, he ultimately concluded that it did not meet the requirements of Listing 1.04(A). He explained that:

> While imaging supports the existence of an underlying medical condition, the record does not contain medical evidence of the additional requirements of this listed impairment including limitations in sensation, reflexes, motor strength, range of motion. Pursuant to Listing 1.04 for disorders of the spine, there was no evidence of spinal compression, as described in the listing. I specifically asked the attorney at the most recent hearing to cite medical evidence satisfying the requirements of the listed impairment, but he failed to do so. I note that the record does contain some references to neurological deficits, but these findings are neither consistently ongoing nor sufficient to meet Listing 1.04, especially given the absence of spinal cord compression.

---

[3] As the Commissioner notes, the Court did not address Claimant's listing argument in its prior opinion but that was only because it determined that remand was required based on Claimant's other arguments. *See Jason S.*, 2020 WL 291381, at *4.

[4] Because Claimant alleges that he suffers from cervical radiculopathy – meaning radiculopathy in the neck – the listing's straight-leg requirement is not relevant here.

7

(R. 646). Unfortunately, not only does this assessment misstate Listing 1.04's requirements, but it fails to address any of the evidence Claimant provided that would support a listing finding. For both of these reasons, this case must be remanded for further review.

### A. The ALJ's misstatement of Listing 1.04(A)'s requirements constitutes reversible error.

When finding that Claimant did not meet Listing 1.04(A), the ALJ focused primarily on the "absence of spinal cord compression" from the record. However, Listing 1.04(A) requires evidence of *nerve root* compression – not spinal cord compression. And while counsel for the Commissioner implies that the two impairments are the same, (Dckt. #22 at 4), that is not the case. As its names suggests, spinal cord compression occurs when the spine itself is compressed or constricted. The resulting symptoms of that compression are known as *myelopathy*. *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 959 n.3 (7th Cir. 2019) ("Myelopathy is an injury to the spinal cord due to severe compression that may result from trauma, congenital stenosis, degenerative disease or disc herniation.") (internal quotation marks omitted). Comparatively, nerve root compression occurs when a *nerve root* in the spinal column is pinched. The resulting symptoms are known as *radiculopathy*. *See Israel v. Colvin*, 840 F.3d 432, 434 n.5 (7th Cir. 2016) ("Radiculopathy is a condition caused by compression, inflammation and/or injury to a spinal nerve root.") (internal quotation marks omitted).

The distinction between the two conditions is critical, as they can each occur independently in the absence of the other. Indeed, radiculopathy – or symptoms of nerve root compression – will only "sometimes" be accompanied by myelopathy – symptoms of spinal cord compression.[5] Thus, the Commissioner's suggestion that Claimant cannot meet Listing

---

[5] *See* John Hopkins Medicine, *Radiculopathy*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy (Last Visited Jan. 30, 2023) ("Sometimes, radiculopathy can be accompanied by myelopathy – compression of the spinal cord itself.").

1.04(A)'s requirements without evidence of spinal cord compression is factually inaccurate. Moreover, because cervical myelopathy is "even rarer" than cervical radiculopathy,[6] by equating the two, the ALJ made Listing 1.04(A) even more difficult to meet. And, because the two terms are not interchangeable, the ALJ erred by relying on the absence of spinal cord compression to support his listings assessment. *See, e.g., Steve S. v. Saul*, No. 19-cv-50041, 2020 WL 4015332, at *4 (N.D.Ill. July 16, 2020) (remanding where the ALJ's "listing analysis appear[ed] to mischaracterize the requirements of Listing 1.04(A), making it unclear whether the ALJ even applied the right criteria to the facts of this case."); *Fieleke v. Berryhill*, No. 4:17-cv-28-JEM, 2018 WL 4184646, at *3 (N.D.Ind. Aug. 31, 2018) ("Because the ALJ . . . misstated the requirements of Listing 1.04, the Court cannot conclude that he performed an adequate analysis of the listing.").

This mix-up is particularly concerning here because – contrary to the Commissioner's assertion, (Dckt. #22 at 5) – there *is* evidence of nerve root compression throughout Claimant's medical record. First, Maria Reese, M.D., diagnosed Claimant with cervical radiculopathy on July 14, 2015. (R. 461). Two days later, on July 16, 2015, Peter Palermo, M.D., also diagnosed Claimant with cervical radiculopathy. (R. 471). On October 26, 2016, Dr. Cybulski testified that Claimant had ongoing symptoms of nerve compression and "chronic cervical radiculopathy."[7] (R. 625). Finally, on March 8, 2019, Mehul Sekadia, D.O., again diagnosed Claimant with cervical radiculopathy. (R. 1144).

---

[6] Sarah McCartney et al, *Cervical radiculopathy and cervical myelopathy: diagnosis and management in primary care*, 68 Brit. J. Gen. Prac. 44, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5737310/ (2018) (Last Visited Jan. 12, 2023).

[7] The Commissioner suggests that Dr. Cybulski found "there was no compression, at least not after plaintiff's February 2015 neck surgery." (Dckt. #22 at 5). In fact, however, Dr. Cybulski testified to the exact opposite effect, noting that after Claimant's surgery, he presented with "*continued symptoms* of

As explained above – and as Claimant aptly notes in his reply, (Dckt. #23 at 2) – radiculopathy is the term used to describe the symptoms of nerve root compression. Accordingly, the ALJ was required to consider this evidence when determining whether Claimant met Listing 1.04(A)'s nerve root compression requirement. *See Smith v. Astrue*, No. 09 C 6210, 2011 WL 722539, at *11 (N.D.Ill. Feb. 22, 2011) (remanding where ALJ acknowledged Claimant's radiculopathy but failed to "note the connection between this point and nerve root compression" in his assessment of Listing 1.04(A)). For this reason, too, his step-three analysis was deficient. *See Ribaudo v. Barnhart*, 458 F.3d 580 (7th Cir. 2006) (finding the ALJ "did not provide a sufficient analysis of the Step 3 question" where he "did not evaluate any of the evidence on [Listing 1.04(A)'s] required criteria that [was] favorable to Ribaudo"); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir.2003) (criticizing ALJ's failure to discuss conflicting evidence at Step 3 inquiry, including the strongest piece of evidence supporting claimant's case).

**B.  The ALJ mischaracterized the record as it relates to Listing 1.04(A)'s other criteria.**

The above errors might be considered harmless if it were apparent that Claimant did not meet any one of the listing's additional criteria. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("An error is harmless only if we are convinced that the ALJ would reach the same result on remand."). However, while the ALJ correctly identified these remaining criteria – limitations in sensation, reflexes, motor strength, and range of motion – his finding that "the

---

what we call radiculopathy . . . *So that had not resolved after the surgery*." (R. 625). He further explained that Claimant's post-surgery symptoms – such as "continued complaints of pain and radiating numbness into his arms" – were "consistent with nerve compression in the cervical spine." (*Id.*). Dr. Cybulski's "final diagnosis" of Claimant was "chronic cervical radiculopathy." (*Id.*). Thus, the Commissioner's assertion that any nerve root compression was resolved by Claimant's February 2015 surgery is undermined by each of these diagnoses – all of which were made after the surgery.

record does not contain medical evidence" of these criteria is contradicted by the record itself. Indeed, as discussed in Claimant's brief and per the Court's own review, the record contains evidence related to each of Listing 1.04(A)'s requirements.

First, treating physicians and physical therapists routinely noted that Claimant's range of motion was restricted, (R. 460, 599, 978, 1137). Second, there are many reports documenting muscle weakness, (R. 434, 459, 477, 908, 978, 1001, 1144). Third, there is at least one treatment note indicating that Claimant's reflexes were diminished, (R. 598), and several notes documenting sensory loss, (R. 459, 598, 908, 982, 1137, 1144). Finally, while the ALJ did not mention the final requirement of the listing – namely, evidence of neuro-anatomic distribution of pain – Claimant's consistent reports of severe pain that radiates from his neck down through his back, shoulders, arms, and fingers provides evidentiary support for his listing claim. *See Bennett v. Berryhill*, No. 1:16-cv-00543-TWP-DML, 2017 WL 4003155, at *5 (S.D.Ind. Sept. 11, 2017) (citing worsening back pain that went down claimant's hips to her leg as evidence of neuro-anatomic distribution of pain); *Timberlake v. Astrue*, No. 3:11-cv-10 RLM, 2012 WL 3987412, at *3 (N.D.Ind. Sept. 11, 2012) (citing a diagnosis of lumbar back pain with radiculopathy as evidence of neuro-anatomic distribution of pain).

Because the ALJ not only failed to address this evidence, but definitively stated that it did not exist, his explanation for finding against Claimant on Listing 1.04(A) does not satisfy the requirement that he "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941; *see also Ribaudo*, 458 F.3d at 584 ("Although the ALJ is not required to mention every piece of evidence in the record, his failure here to evaluate any of the evidence that potentially supported Ribaudo's [Listing 1.04(A)] claim does not provide much assurance that he adequately considered Ribaudo's case.") (internal citation omitted); *Indoranto v.*

11

*Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004) (noting an ALJ "must confront the evidence that does not support his conclusion and explain why it was rejected").[8]

Finally, the Court notes that the ALJ's stipulation that "the record does contain some references to neurological deficits, but these findings are neither consistently ongoing nor sufficient to meet Listing 1.04" is insufficient to mitigate the above-outlined errors. The phrase "neurological deficits" is not included in the listing and is too broad to assure the Court that the ALJ reviewed whether the specific evidence supporting Claimant's listing claim met the durational requirement. *See, e.g., Patterson v. Berryhill*, No. 17-cv-50202, 2018 WL 6830331, at *2 (N.D.Ill. Dec. 28, 2018) (ALJ's statement that claimant did not satisfy Listing 1.04 because there were no "regular findings of neurological deficits" was insufficient to support his step three conclusion).

In closing, the Court notes that it does not intend to substitute its judgment for that of the ALJ. Indeed, the Court could not properly do so even if wanted to. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (reviewing court may not "substitute its judgment for that of the Commissioner"). On remand, the ALJ may reach his own determination as to whether Claimant's impairment meets the requirements of Listing 1.04(A) but he must: (1) correctly identify the listing's criteria; (2) address the evidence supporting a contrary finding; and (3) avoid mischaracterizing the record while doing so. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (a court "cannot uphold an administrative decision that fails to mention highly

---

[8] Although counsel for the Commissioner does not dispute that this evidence was missing from the listing assessment, he asserts that the ALJ's analysis remained sufficient because "the ALJ discussed specific evidence after step three that supported" his conclusion, including evidence showing diminished strength and sensation. (Dckt. #22 at 4). However, the evidence the Commissioner cites undercuts the ALJ's step-three finding that "the record does not contain medical evidence" of any of the symptoms described by the listing. *Cf. Zellweger v. Saul*, 984 F.3d 1251, 1254-55 (7th Cir. 2021) (finding that the ALJ's step three analysis of claimant's Listing 1.04 argument was sufficient where the evidence cited by the ALJ in the RFC section of his decision *supported* the rejection of claimant's listing argument).

12

pertinent evidence or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome") (internal citation omitted); *Kastner v. Astrue*, 697 F.3d 642, 647-48 (7th Cir. 2012) (remanding where the ALJ's listing analysis failed to articulate rationale for denying benefits when record supported finding in claimant's favor).

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the Commissioner's decision to deny him DIBs, (Dckt. #15), is granted and the Commissioner's motion for summary judgment, (Dckt. #21), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**ENTERED: January 30, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**